# IN THE SUPREME COURT OF IOWA

No. 11–2031

Filed March 22, 2013

**STATE OF IOWA,**

Plaintiff,

vs.

**IOWA DISTRICT COURT FOR WARREN COUNTY,**

Defendant.

---

On review from the Iowa Court of Appeals.

Certorari to the Iowa District Court for Warren County, Richard B. Clogg, District Associate Judge.

A child seeks further review of a court of appeals decision sustaining a writ of certiorari and holding the juvenile court lacked authority to enter a consent decree placing the child in a residential facility. **WRIT SUSTAINED; COURT OF APPEALS DECISION AFFIRMED; CASE REMANDED.**

Thomas J. Miller, Attorney General, Charles K. Phillips and Bruce L. Kempkes, Assistant Attorneys General, John W. Criswell, County Attorney, and Douglas A. Eichholz and Karla J. Fultz, Assistant County Attorneys for plaintiff.

Jane M. White of Pargulski, Hauser & Clarke, P.L.C., Des Moines, for defendant.

**MANSFIELD, Justice.**

This case asks us to consider the juvenile court's authority in a delinquency proceeding to enter a consent decree, over the State's objection, placing a child in the legal custody of juvenile court services, with the department of human services as payment agent, for purposes of placement in a residential facility. For the reasons set forth herein, we conclude the legislature did not grant this authority to juvenile courts in Iowa Code section 232.46, and therefore we sustain the writ of certiorari, affirm the decision of the court of appeals, and remand this case for further proceedings consistent herewith.

## I. Background Facts and Proceedings.

After receiving reports that fifteen-year-old J.W.R. and his thirteen-year-old brother engaged in sex acts with their twelve-year-old sister, the State filed a petition in March 2011, alleging that J.W.R. committed the delinquent acts of sexual abuse in the third degree and incest.[1] J.W.R. was removed from the family home and detained at the Polk County Juvenile Detention Center. During the pendency of the proceeding, J.W.R. was moved first to the Polk County Youth Shelter and then to Four Oaks, a shelter located in Iowa City. This placement outside J.W.R.'s home was based on the court's concern for the safety of the juvenile's sister, who still lived at home, and concern that J.W.R. might reoffend in a less restrictive environment. On October 19, 2011, J.W.R. entered an *Alford* plea to the incest allegation, and the State dismissed the sexual abuse charge.

A juvenile court officer (JCO) recommended J.W.R. be adjudicated a delinquent and placed in a residential treatment facility for sex

---

[1]The State also filed a petition against J.W.R.'s brother. A consent decree was entered in his case, and he went to live with his aunt and uncle.

offenders. The JCO's recommendation was based partly on an evaluation of J.W.R. by a psychologist who diagnosed J.W.R. with Asperger's disorder and found that J.W.R. "was not safe out in the community given his level of accepted responsibility, impulsivity and his general denial." The JCO added that he had been "asked if a Consent Decree would be appropriate for [J.W.R.], unfortunately, there is not a section in the Code that allows a transfer of custody and placement for children under a Consent Decree."

At the dispositional hearing during the afternoon following J.W.R.'s *Alford* plea of guilty, J.W.R. offered the testimony of a child psychiatrist, Dr. Kevin Took, who had reviewed the mental health records and met with J.W.R. Dr. Took generally concurred in the diagnosis of J.W.R., although he preferred to describe it as pervasive developmental disorder not otherwise specified (PDD-NOS).[2] He strongly recommended against placing J.W.R. in a sex offender treatment facility. He concluded that because of J.W.R.'s developmental disorder and his lack of history of other inappropriate sexual behavior, he would likely be victimized himself or learn more inappropriate sexual behavior if placed in such a facility. Dr. Took opined that a community-based program focusing on improving all of J.W.R.'s social skills would be the most effective and appropriate under the circumstances. Dr. Took recommended either a family placement or, if no family placement was available, foster care.

J.W.R. requested the court to enter a consent decree pursuant to Iowa Code section 232.46. The State argued that J.W.R. should be

---

[2]Pervasive developmental disorders (PDDs) include several conditions, ranging from the relatively mild—Asperger's—to the most severe—childhood disintegrative disorder—and includes autism. PDDs are characterized by delays in the development of multiple basic functions including socialization and communication. Pervasive developmental disorder not otherwise specified (PDD-NOS) refers to a PDD which is more severe than Asperger's but not as severe as autism.

adjudicated a delinquent and placed in a residential treatment facility. The State maintained that "if the Court decides to place [J.W.R.]," a consent decree would be inappropriate.

The juvenile court issued a consent decree on October 21, 2011, withholding adjudication that J.W.R. had committed a delinquent act. The court directed that J.W.R. be placed under the supervision of juvenile court services to receive a treatment program. It ordered that J.W.R. remain in the Iowa City youth shelter pending placement in a relative's home or a foster home. The court also indicated that a further hearing would occur on November 17.

The State filed a motion to enlarge, arguing that the court did not have the authority to place J.W.R. outside the family home under a consent decree, citing *In re C.D.P.*, 315 N.W.2d 731 (Iowa 1982), and Iowa Code sections 232.46 and 232.57. The juvenile court then issued an order on November 15 reaffirming that "placement outside of the family home is an option which should be considered" and noting that it would also consider placing J.W.R. in a psychiatric medical institute (PMI) for children.

Further hearings were held in late November and early December. The JCO had supplemented his predisposition report after exploring various placement options for J.W.R. The JCO reported that J.W.R. could not be placed back into his own home because the victim was living there and a no-contact order was in place. J.W.R.'s father was willing to take custody of J.W.R., but the father's work schedule would have left J.W.R. unsupervised for most of the day. J.W.R.'s aunt and uncle also expressed an interest in providing J.W.R.'s care, but J.W.R.'s brother had already been placed with them. Because the two boys had acted together in committing the offenses against their sister, it was not

recommended that they live together. The JCO had also investigated the possibility of other individual foster care placements, but at that time there were no foster homes willing or available to match J.W.R.'s needs or circumstances. Three potential PMI placements had also declined because J.W.R. needed sex offender treatment.

JCO had located two group foster care placements that he found suitable for J.W.R. As he explained, "Both programs specialize in sex offending issues and have or did have clients with diagnosis of Pervasive Development Disorder/Asperger's." The JCO therefore recommended that J.W.R. be placed in either of these residential treatment/group foster care facilities. The JCO noted that these programs do not necessarily use a "Positive Peer Culture" and therefore would not raise the concerns voiced by Dr. Took about J.W.R. being subject to abuse or learning behavior from other sex offenders.

On December 5, 2011, over the State's objection that it lacked authority to do so, the court continued the consent decree and ordered J.W.R. placed in a group foster care facility. Specifically, the juvenile court ordered:

> Adjudication is withheld and the child shall remain on his Consent Decree as previously ordered by the Court.

> The child is placed in the temporary legal custody of Juvenile Court Services, with the Department of Human Services as payment agent, for the purposes of placement in residential treatment.

The State filed a petition for writ of certiorari, contending the juvenile court exceeded its authority by entering a consent decree that placed J.W.R. in residential treatment. We granted the writ and transferred the case to the court of appeals. The court of appeals sustained the writ of certiorari, reasoning: "In the instant case, the

juvenile court ordered legal custody of [J.W.R.] to juvenile court services with the DHS 'as payment agent' for purposes of placement in residential treatment. This disposition is not permissible under section 232.46." One judge on the panel dissented. J.W.R. sought further review, and we granted his application.

## II. Scope of Review.

Certiorari is appropriate when a lower court or tribunal has exceeded its authority or otherwise acted illegally. Iowa Ct. R. 1.1401, *Fisher v. Chickasaw Cnty.*, 553 N.W.2d 331, 333 (Iowa 1996). Our review is for corrections of errors at law. *State Pub. Defender v. Iowa Dist. Ct.*, 747 N.W.2d 218, 220 (Iowa 2008). "Illegality exists when the court's findings lack substantial evidentiary support, or when the court has not properly applied the law." *Id.* (citation and internal quotation marks omitted).

## III. Discussion.

When a juvenile is believed to have committed a delinquent act, the county attorney may initiate judicial proceedings by filing a petition. Iowa Code § 232.35(1) (2011). The "consent decree," however, provides a way for those proceedings to be suspended short of an adjudication of delinquency:

> At any time after the filing of a petition and prior to entry of an order of adjudication pursuant to section 232.47, the court may suspend the proceedings on motion of the county attorney or the child's counsel, enter a consent decree, and continue the case under terms and conditions established by the court. These terms and conditions may include prohibiting a child from driving a motor vehicle for a specified period of time or under specific circumstances, or the supervision of the child by a juvenile court officer or other agency or person designated by the court, and may include the requirement that the child perform a work assignment of value to the state or to the public or make restitution consisting of a monetary payment to the victim or a work assignment directly of value to the victim.

*Id.* § 232.46(1).

The consent decree may remain in force for up to a year and may be extended for a second year. *Id.* § 232.46(4). If the child fails to comply with the terms and conditions, he or she may be "held accountable as if the consent decree had never been entered." *Id.* § 232.46(5). However, if the child complies with the terms and conditions for the required time, the original petition may not be reinstated and the child may not be proceeded against for any delinquent act alleged in the petition. *Id.* § 232.46(5)–(6).

The consent decree is essentially a bipartite arrangement between the juvenile court and the allegedly delinquent child that is memorialized in a court order (hence the term "consent decree").[3] Even if the county attorney objects to the consent decree, the juvenile court may enter it over the county attorney's objections. *Id.* § 232.46(3). And nothing requires that the consent decree be approved by the child's parents, so long as the parents are informed of the consequences of the decree and the child "has voluntarily and intelligently agreed to the terms and conditions of the decree." *Id.*

The dispute in this case centers on the meaning of "terms and conditions" in section 232.46(1). J.W.R. appears to contend that the meaning is open-ended, so long as the court acts in the best interests of the child. In his appellate brief, J.W.R. writes, "There is nothing in Iowa Code § 232.46 which prohibits any specific term and condition which the Court deems appropriate." However, at oral argument, J.W.R.'s counsel

---

[3]The child may move the court to enter a consent decree, in which case he or she bears the burden to show that entry of a decree is appropriate and the ultimate decision whether to grant the juvenile's request rests in the juvenile court's discretion. *In re Matzen*, 305 N.W.2d 479, 481–82 (Iowa 1981).

conceded there were some limits on the terms and conditions that may be imposed in a consent decree.

The State counters that the phrase "terms and conditions" needs to be read in context and refers to the sort of terms and conditions that would be imposed on a child who is returning to the community, such as driving restrictions, supervision, or restitution. In other words, in the State's view, ordering the child to a residential facility would not be a permissible term and condition.

Here, the juvenile court agreed with J.W.R. and ultimately used the consent decree procedure to place him in the temporary custody of juvenile court services so he could enter a group foster care facility where he could receive treatment for his sex offenses and his mental health condition. We believe the phrase "terms and conditions" is ambiguous and needs to be interpreted within its statutory context.

> "A statute is ambiguous if reasonable minds could differ or be uncertain as to the meaning of the statute. Ambiguity may arise from specific language used in a statute or when the provision at issue is considered in the context of the entire statute or related statutes."

*Mall Real Estate, L.L.C. v. City of Hamburg*, 818 N.W.2d 190, 198 (Iowa 2012) (quoting *Sherwin-Williams Co. v. Iowa Dep't of Revenue*, 789 N.W.2d 417, 424–25 (Iowa 2010)); *see also* Iowa Code § 4.1(38) ("Words and phrases shall be construed according to the context and the approved usage of the language . . . ."). The first sentence of section 232.46(1) states that the court may "enter a consent decree, and continue the case under terms and conditions established by the court." Iowa Code § 232.46(1) The next sentence of the section goes on, "These terms and conditions may include . . . ." *Id.* The remainder of the sentence then furnishes three specific examples of what a consent decree

may include: (1) "prohibiting a child from driving a motor vehicle for a specified period of time or under specific circumstances"; (2) "the supervision of the child by a juvenile court officer or other agency or person designated by the court"; (3) "the requirement that the child perform a work assignment of value to the state or to the public or make restitution consisting of a monetary payment to the victim or a work assignment directly of value to the victim." *Id.*

In our view, the second sentence of section 232.46(1) is not mere window dressing. *See id.* § 4.4(2) (stating that it is presumed "[t]he entire statute is intended to be effective"); *Mall Real Estate*, 818 N.W.2d at 198 (indicating that we "interpret statutes in such a way that portions of [them] do not become redundant or irrelevant"). Instead, we conclude that the second sentence provides needed context and illustrates the *types* of conditions the juvenile court may impose. *See Eyecare v. Dep't of Human Servs.*, 770 N.W.2d 832, 837 (Iowa 2009) ("Generally, 'the verb "includes" imports a general class, some of whose particular instances are those specified in the definition.' " (quoting *Helvering v. Morgan's, Inc.*, 293 U.S. 121, 125 n.1, 55 S. Ct. 60, 61 n.1, 79 L. Ed. 232, 235 n.1 (1934))). None of the examples given in section 232.46(1) involve changing the placement or custody of the child.[4]

There are additional reasons why we conclude the terms and conditions authorized by section 232.46(1) do not include transfer of custody and placement in a residential facility. First, there is no mechanism in the law for funding a residential placement in a group

---

[4]The original list included only one item—"the supervision of the child by a juvenile probation officer or other agency or person designated by the court." *See* 1978 Iowa Acts ch. 1088, § 26. Still, the point remains that the list has never included conditions that amount to a change in where the child will live and who will be legally responsible for him or her.

foster home under a section 232.46 consent decree. The juvenile court ordered such funding in this case, but it cited no authority for doing so. Section 234.35, cited by J.W.R.'s counsel, indicates that the department of human services shall pay the cost of care in nine specifically described circumstances, none of which is present here. These circumstances include when a court has transferred custody of the child to the director of human services, as in a child-in-need-of-assistance (CINA) proceeding, or when a court has entered an order under section 232.52(2)(*d*) transferring custody of the child following an adjudication of delinquency. *See* Iowa Code § 234.35(1)(*b*), (*e*). In short, section 234.35 supports the State's position in this case, because it specifically requires the State to pay for group foster care that is ordered following an adjudication of delinquency or CINA, but it does not mention consent decrees at all. *See id.* § 232.35(1)(*e*).

Another possible argument, not raised by J.W.R., is that section 232.141(4)(*c*) authorizes state funding here. Section 232.141(4) provides:

> 4. Upon certification of the court, all of the following expenses are a charge upon the state to the extent provided in subsection 5:
>
> *a.* The expenses of transporting a child to or from a place designated by the court for the purpose of care or treatment.
>
> *b.* Expenses for mental or physical examinations of a child if ordered by the court.
>
> *c.* The expenses of care or treatment ordered by the court.

However, we believe the reference in subsection (*c*) does not include group foster care. We know this because section 232.143 requires planning for group foster care expenditures to be coordinated with "planning for services paid under section 232.141, subsection 4." *See*

Iowa Code § 232.143(2). Thus, section 232.143 indicates that group foster care expenditures and "care or treatment" expenditures under section 232.141(4) are two separate things.

Because the legislature did not authorize funding for residential placements to group foster homes under consent decrees, it logically follows that the legislature did not intend such placements to occur. As the court of appeals put it, "If consent decrees could result in foster care placement, then the legislature presumably would have included them in [the section 234.35(1)(*e*)] payment provision." It is true that the State is not separately challenging the juvenile court's directive that it *pay* for J.W.R.'s group foster care, but rather is challenging the court's overall authority to *order* that disposition. Nonetheless, as a matter of statutory interpretation, we should be hesitant to read a statute as authorizing a disposition for which there are no available means of payment.[5]

In interpreting the phrase "terms and conditions" in section 232.46, it is fair for us to consider that the legislature provided no way to pay for residential placements ordered under consent decrees, as opposed to residential placements ordered by other means. We try to read statutes to avoid conflicts and to reach reasonable results. *See* Iowa Code §§ 4.4(3), .7; *Iowa Right to Life Comm., Inc. v. Tooker*, 808 N.W.2d 417, 428 (Iowa 2011) ("Of course, we do not interpret statutes in isolation, especially when they are in apparent conflict.").

Second, section 232.46 speaks in terms of the child "compl[ying] with the express terms and conditions of the consent decree for the required amount of time." Iowa Code § 232.46(5). The outer time limit is

---

[5]The juvenile court appointed counsel for J.W.R. based on his mother's financial affidavit. There is no indication that the parents would be able or willing to pay for group foster care for J.W.R.

no more than two years. *Id.* § 232.46(4). These concepts make sense if one is talking about loss of a privilege, like driving; or being subjected to reporting and supervision; or undertaking a community service obligation or making restitution. But their logic is less apparent when one is talking about placement in a group foster home. We normally would not use the verb "complying with" to describe what the child is doing in that circumstance. Also, what would happen when the two-year maximum time period runs out and the child still is in need of treatment or has nowhere else to go? While probation-like conditions normally have a deadline, we would not think of treatment having such a deadline.

Third, there is an apparent parallel between section 232.46, the consent decree provision for delinquency proceedings, and section 232.100, the "suspended judgment" provision for child in need of assistance (CINA) proceedings. Section 232.100 is worded similarly to 232.46 and provides:

> After the dispositional hearing the court may enter an order suspending judgment and continuing the proceedings subject to terms and conditions imposed to assure the proper care and protection of the child. Such terms and conditions may include the supervision of the child and of the parent, guardian or custodian by the department of human services, juvenile court office or other appropriate agency designated by the court.

Iowa Code § 232.100. This is considered the "least" restrictive alternative available following a CINA adjudication, in contrast with section 232.102 which provides for "[t]ransfer of legal custody of child and placement." *See* Iowa Code §§ 232.99(4), .102.

The similar design of section 232.46 and section 232.100 is worth noting. Both allow the court to stop the proceeding (either the delinquency adjudication or the CINA disposition) and instead impose terms and conditions that "may include" supervision. This parallelism

dates back to 1978, when our legislature made a comprehensive revision of the juvenile justice laws. *See* 1978 Iowa Acts ch. 1088 (codified at Iowa Code ch. 229 (1979)); *In re P.L.*, 778 N.W.2d 33, 36–37 (Iowa 2010) (discussing this revision). As enacted in 1978, section 232.46's predecessor provided:

> At any time after the filing of a petition and prior to the entry of an order of adjudication . . . , the court may suspend the proceedings on motion of the county attorney or the child's counsel, enter a consent decree, and continue the case under terms and conditions established by the court. These terms and conditions may include the supervision of the child by a juvenile probation officer or other agency or person designated by the court.

1978 Iowa Acts ch. 1088, § 26(1). And section 232.100's predecessor provided:

> After the dispositional hearing the court may enter an order suspending judgment and continuing the proceedings subject to terms and conditions imposed to assure the proper care and protection of the child. Such terms and conditions may include the supervision of the child and of the parent, guardian or custodian by the department of social services, juvenile probation office or other appropriate agency designated by the court.

*Id.* § 56.

Section 232.100, like section 232.46, does not expressly limit the terms and conditions the juvenile court can impose. But consistent with the statutory structure, we have said that when there is a suspended judgment, the child remains with the parent. *In re Long*, 313 N.W.2d 473, 476 (Iowa 1981). We have the same structure here, as well as similar terminology (i.e., "terms and conditions" and "[s]uch terms and conditions may include the supervision of the child").

Fourth, our precedents support this interpretation of section 232.46(1). In *In re C.D.P.*, the juvenile court initially ordered the child, with his and the county's consent, to be placed at a specific facility. 315

N.W.2d at 732. Later, the juvenile court also ordered transfer of the child's custody to the State, ordered that the child remain in the same facility, and ordered that the State pay the costs of the child's placement retroactively to his initial admission. *Id.* On the State's appeal, we held that the direction to place the child in a specific facility was improper because section 232.52(2)(*d*) only gave the juvenile court authority to "direct the type of placement," not to "direct a specific placement." *Id.* at 733. We also noted that, notwithstanding the county and the juvenile's argument that the disposition had been ordered by consent under section 232.46, "if [the county] wishes to pursue the proceeding, [the county] must secure an adjudication of delinquency in order to support the disposition." *Id.* If a consent decree could bring about an out-of-home placement, we would not have directed the county to "secure an adjudication of delinquency" upon remand to obtain the out-of-home disposition. *See id.*; *see also In re Rousselow,* 341 N.W.2d 760, 762 (Iowa 1983) (describing a consent decree as "a juvenile court decree whereby the case may be continued, the child placed on probation under supervision, with the child being required to make restitution to the victim or performing a work assignment of equivalent value for the victim or state").

Finally, under J.W.R.'s interpretation of section 232.46(1), a child could potentially be taken away from his or her parents without the parents' consenting to the action or even having an opportunity to be heard. That would raise serious due process concerns. "The parent-child relationship is constitutionally protected." *In re H.L.B.R.,* 567 N.W.2d 675, 677 (Iowa Ct. App. 1997). True, a child also can be removed under some circumstances if the child is adjudicated CINA or if the child is adjudicated to be delinquent. But in the former instance, the parents

will be parties to the proceeding, and in both of these instances, evidence will be presented, and the court will render a decision based on specific legal standards. *See* Iowa Code § 232.2(6) (defining "child in need of assistance"); *id.* § 232.2(12) (defining "delinquent act"); *id.* § 232.47 (setting forth rules and procedures for an adjudication of delinquency); *id.* § 232.50 (requiring a dispositional hearing after an adjudication of delinquency); *id.* § 232.52 (setting forth possible dispositions and requiring the court to enter "the least restrictive dispositional order appropriate in view of the seriousness of the delinquent act"); *id.* § 232.96 (setting forth rules and procedures for a CINA hearing); *id.* § 232.99 (requiring a dispositional hearing after a CINA adjudication and requiring "the least restrictive disposition appropriate considering all the circumstances of the case"). The consent decree process, by contrast, simply involves a court exercising its discretion and obtaining the agreement of the child. Normally, we interpret statutes so they do not present constitutional difficulties. *See id.* § 4.4(1).

No due process claim has been raised in this case, and there is no indication that either parent is opposed to what the juvenile court ordered here. Yet that is not the point. We need to take constitutional requirements into account when we interpret ambiguous language, such as "terms and conditions." Section 232.46(3) states, "A consent decree shall not be entered unless the child and the child's parent, guardian or custodian is informed of the consequences of the decree by the court and the court determines that the child has voluntarily and intelligently agreed to the terms and conditions of the decree." In short, the legislature specifically provided that the child had to agree to the decree but the parent only had to be informed of its consequences. In this tight space, there is no room to insert a provision for a hearing where the

parent objects. We would be rewriting the statute. Instead, to avoid due process problems, we should interpret the more elastic phrase "terms and conditions" as not authorizing a change of custody and a group foster care placement.

J.W.R. argues that any ambiguities in section 232.46(1) should be interpreted in favor of the child. Section 232.1 provides,

> "This chapter shall be liberally construed to the end that each child under the jurisdiction of the court shall receive, preferably in the child's own home, the care, guidance and control that will best serve the child's welfare and the best interest of the state."

Notably, this language refers to both the interest of the child and that of the state. In any event, as we have said in another context, the concept of the child's best interests must be applied within the framework established by the legislature. *See In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010). We believe the overall statutory design here compels the conclusion that terms and conditions do not include a change of custody and placement in a residential facility.[6]

**IV. Conclusion.**

For the foregoing reasons, we find that section 232.46 is a less restrictive alternative, analogous to the suspended judgment, whereby a child can remain with his parent or parents under supervision, restrictions, or restitutionary obligations without being adjudicated

---

[6]In his application for further review, J.W.R. argues that it would violate the Equal Protection Clause of the United States Constitution for him to be denied a consent decree when his brother was granted one. This argument was not raised either in J.W.R.'s appellee brief or in the juvenile court, and therefore we do not reach it. *See Chamberlain, L.L.C. v. City of Ames*, 757 N.W.2d 644, 648 (Iowa 2008) ("When presented with an application for further review from the court of appeals, we may consider 'all of the issues properly preserved and raised in the original briefs.'" (quoting *Bokhoven v. Klinker*, 474 N.W.2d 553, 557 (Iowa 1991))).

delinquent. It does not authorize a juvenile court to change temporary custody, send a child to a residential facility, and require State payment.

This does not mean we have any *substantive* disagreement with J.W.R.'s placement. The issue is not whether J.W.R. should be placed in group foster care where he can receive appropriate treatment. The issue is whether a juvenile court can bring about that result by ordering a transfer of custody, payment by the State, and a residential placement pursuant to section 232.46, the consent decree provision of the juvenile justice chapter. In our view, the legislature established the framework, and it must be followed here. *See Anderson v. State*, 801 N.W.2d 1, 1 (Iowa 2011).

J.W.R. could be placed in the group foster home under section 232.52(2)(*d*) following an adjudication of delinquency. Alternatively, and without an adjudication of delinquency, it may be possible to place him there as a child in need of assistance under section 232.2(6)(*l*). Indeed, J.W.R. makes this very point on appeal, stating,

> It is unfortunate that the State chose not to handle this matter as a Child in Need of Assistance proceeding rather than a delinquency. A [CINA] proceeding would have allowed a lot more flexibility in treating the needs of this entire family.

As detailed above, a large part of the problem here is that for reasons beyond his control, J.W.R. cannot be placed with any of his relatives.

Lastly, we are not deciding that a juvenile court can *never* use its consent decree authority to arrange for a child to receive treatment out of the home. We leave that question for another day. We are holding, simply, that the decree in this case involving a residential placement that

required a change of custody and State payment exceeded the court's authority under section 232.46.[7]

We sustain the writ. We remand this case to the juvenile court for further proceedings consistent herewith.

**WRIT SUSTAINED; COURT OF APPEALS DECISION AFFIRMED; CASE REMANDED.**

All justices concur except Appel, Wiggins, and Hecht, JJ., who dissent.

---

[7]Here, the consent decree involved removing J.W.R. from his parents and putting him in a group foster home for treatment purposes. The State objected to this below, stating among other things, "The State believes that the Court's grant of a Consent Decree requires the return of the child to his paternal or maternal home." On appeal, the State urges that residential treatment may never be ordered under a consent decree. As we often do in deciding appeals, we have accepted the State's argument *in part. See, e.g., State v. Clark*, 351 N.W.2d 532, 536 (Iowa 1984) ("We go with Clark's argument only part of the way."), *superseded by statute,* 1986 Iowa Acts ch. 1220, § 2, *as recognized* in *State v. Chesmore*, 474 N.W.2d 551, 552 (Iowa 1991). We conclude that under the circumstances presented here, where residential treatment requires a change of custody, the decree exceeded the juvenile court's authority under section 232.46. We do not and need not decide whether the State's argument is correct in its entirety.

**APPEL, Justice (dissenting).**

I agree with the majority opinion to the extent it rejects the contention that a juvenile court is categorically prohibited from ordering residential treatment as part of a consent decree. I respectfully dissent from the balance of the opinion and the result in this case.

The sole issue before the court, according to the State's brief, is whether "According to Governing Case Law, The Juvenile Court Acted Illegally When It Granted A Consent Decree, Then Proceeded to Place [J.W.R.] in Residential Treatment." The sole issue presented under this heading is whether a juvenile may be placed in residential treatment pursuant to a consent decree. It is a categorical challenge to the authority of the juvenile court to impose residential treatment as a term or condition of a consent decree. The answer to this categorical question, as I explain below, is that the juvenile court has broad discretion under Iowa Code section 232.46 (2011) to impose residential treatment as a term or condition of a consent decree. Because this is the only issue raised on appeal, this case should be affirmed.

Though the sole issue as presented by the State is whether the juvenile court may place the child in residential treatment pursuant to a consent decree, the majority opinion begins by rewriting the State's characterization of the issue to add new issues. According to the majority:

> This case asks us to consider the juvenile court's authority in a delinquency proceeding to enter a consent decree, over the State's objection, *placing a child in the legal custody of juvenile court services, with the department of human services as payment agent,* for purposes of placement in a residential facility.

(Emphasis added.) The majority thus adds two issues into the case that the State did not present either at the district court or on appeal. First, the majority attempts to expand the issues to include a question of *custody*. Second, it interjects the issue of *payment* for the residential services.

No one challenged the issue of temporary transfer of custody under the juvenile code in the juvenile court at any time. At the beginning of the case, the juvenile court, after the parents were given notice and an opportunity to be heard, temporarily transferred "custody" to juvenile court services and placed J.W.R. in shelter care pursuant to Iowa Code section 232.21. As correctly noted by the State in its statement of the issue, what is involved in this case is the *placement* of the child, not a temporary transfer of custody.

The State raised no objection to the temporary transfer of custody to juvenile court services when J.W.R. was placed in shelter care. Neither did the parents, despite their opportunity for a full hearing on the issue. *See* Iowa Code § 232.38. The consent decree and subsequent orders relating to residential treatment did not change this custody arrangement. Instead, it only transferred J.W.R. from his then-current placement, Four Oaks, to a residential facility where he could receive both shelter care and appropriate treatment.

The State did not claim custody could not remain with juvenile court services after the transfer to residential treatment. The State did not claim the *custody arrangements* were improper, and no rule 1.904(2) motion was ever filed claiming the juvenile court lacked statutory authority to continue custody with juvenile court services. *See Meier v. Senecaut*, 641 N.W.2d 532, 539 (Iowa 2002) (noting that a rule 1.904(2) (then-rule 179(b)) motion is "necessary to preserve error 'when the

district court *fails to resolve* an issue, claim, or other legal theory properly submitted for adjudication'" (citation omitted)). The sole objection raised by the State was that the juvenile court lacked the authority to require residential treatment as a term or condition of a consent decree.

Nor is the issue of payment by DHS before the court. The issue was not raised with the juvenile court at any place or time. Nowhere in the appellate brief does the State challenge the payment mechanism. The most that can be said is that the State cited *In re C.D.P.*, 315 N.W.2d 731 (Iowa 1982), an action brought by the department of social services challenging an order requiring it to fund residential treatment without a transfer of custody to the department.

Plainly, unlike this case, *In re C.D.P. was* a funding dispute. The department was a party in the case seeking to avoid payment. *Id.* at 733. The State relied upon *In re C.D.P.* here to support its argument that residential treatment may *never* be ordered under Iowa Code section 232.46, which is, of course, a completely different issue. Nowhere in its brief on appeal does the State claim on behalf of DHS that it has been improperly ordered to pay. Nowhere is there any suggestion that the State is seeking to protect the public purse. The majority opinion in effect seeks to vindicate what it sees as the interests of DHS in a proceeding when DHS is not before the court and none of the parties have raised the funding issue. The majority opinion takes J.W.R. to task for not raising arguments related to funding, when the issue was never raised in the case. But J.W.R. cannot be faulted for not jousting with ghosts.

The majority suggests that an interpretation of funding provisions is essential to determine the scope of the terms and conditions that a

district court may impose pursuant to a consent decree under Iowa Code section 232.46. Even if the issue of state funding were properly before the court, with full briefing of the applicable statutes and argumentation, a decision that the State cannot be required to pay for residential services pursuant to a consent decree would not prevent a juvenile court from ordering residential treatment if payment could be obtained from another source.

The majority correctly notes that nothing in the record indicates that there may be payment from another source. But then, oddly, the majority uses that against J.W.R. In fact, the issue was not raised below because it was not joined in the juvenile court. The lack of juvenile court development of the issue cannot be charged against J.W.R. when the State did not raise the issue at the juvenile court level. Once again, the majority thus turns issue preservation on its head by attacking a party's failure to respond to an issue that the opposing party failed to raise.

In short, I would rule solely on the issue presented and affirm the order of the juvenile court. I would defer to another day the other issues the litigants have not brought to us and which have not been fully briefed. For the reasons expressed below in some detail, I conclude a juvenile court may order residential treatment as a term or condition of a consent decree. Our precedents require us to defer to another day the other issues that the litigants have not brought to us.

In any event, even under the majority opinion, the juvenile court on remand has some room to sculpt a consent decree. In its concluding paragraph, which I take is the holding of the case, the majority does not prohibit the juvenile court from making a residential placement pursuant to a consent decree. Admittedly, there is language in the majority opinion to the contrary, but this must be regarded as dicta in light of the

explicit holding. The issue in this case may be moot, but under the majority opinion, if the juvenile court alters the temporary custody language and does not mandate that DHS pay for the services under Iowa Code chapter 232, the juvenile court in other cases may be able to exercise discretion to craft a consent decree involving residential treatment in the best interest of the child.

## I. Background Facts and Proceedings.

After the State filed a petition in March 2011 alleging that fifteen-year-old J.W.R. committed the delinquent acts of sexual abuse in the third degree and incest, J.W.R. was removed from the family home and detained at the Polk County Juvenile Detention Center. On June 3, the court entered an order placing the child in "the temporary custody of the . . . Juvenile Court Services, with the Iowa Department of Human Services as payment agent." A copy of the June 3 order was served on the department.

On October 19, J.W.R. entered an *Alford* plea to the incest allegation, and the State dismissed the sexual abuse charge. At the hearing following his *Alford* plea, J.W.R. requested that the court enter a consent decree pursuant to Iowa Code section 232.46 rather than proceed to adjudication. The evidence adduced at the hearing revealed that mental health experts had diagnosed J.W.R. with Asperger's syndrome, a type of pervasive development disorder. Expert testimony indicated J.W.R. could benefit from residential treatment, an option recommended by the juvenile court officer assigned to the case.

The State resisted the entry of a consent decree. The county attorney told the district court:

> I don't believe that a consent decree plus placement is even a possibility in this case and I would present the Court a case on that. It's *In the Interest of C.D.P.,* 315 N.W.2d 731, an

Iowa Supreme Court case that talks about placement after a consent decree not being allowed. So if the Court decides to place [J.W.R.], I don't believe consent decree is appropriate based on my reading of that case.

On October 21, the juvenile court entered its findings of fact, conclusions of law, and order. The district court noted that there were no prior referrals related to the child and that the child was a "good candidate for juvenile probation because the child has done well in detention and shelter care." As a result, the juvenile court declared that entry of a consent decree was "in the best interests of the child."

With respect to placement, the October 21 order stated that J.W.R.

shall be placed on a Consent Decree under the supervision of the Fifth Judicial District Juvenile Court Services upon the terms and conditions as may be reasonably required, and which shall include a mental health treatment program. The Juvenile Court Officer is directed to supplement the Predisposition Report to consider placement of the child in a foster home if placement in a relative's home is not an option. Pending such report and further order, the child shall remain in his current placement at Four Oaks, Iowa City Youth Shelter . . . .

The State on November 4 filed a motion to enlarge, arguing again that the district court lacked the authority to place the child outside the home as part of a consent decree. On November 15, the juvenile court generally denied the motion to enlarge, but did further state that placement outside the family home should be considered, including possible placement in a psychiatric medical institution for children.

On November 16, the juvenile court filed a further order. This order stated that "temporary custody of the child is continued with Juvenile Court Services, with the Iowa Department of Human Services as payment agent, for purposes of placement in a shelter care facility." Unfortunately for J.W.R., the juvenile court was precluded from placing him in his own home because the victim still lived there. Further

complicating the matter, although J.W.R.'s aunt and uncle had expressed an interest in caring for him, J.W.R.'s younger brother had already been placed there. The juvenile court officer recommended that the two boys not live together because they had acted together in committing the offenses. The juvenile court officer further recommended against J.W.R. living with his father because his father's work schedule would have left J.W.R. unsupervised for most of the day.

Finally, the juvenile court filed its consent decree on December 5. This order stated, "The child is placed in the temporary legal custody of Juvenile Court Services, with the Department of Human Services as payment agent, for the purpose of placement in residential treatment." It appears the juvenile court was contemplating placement, at the recommendation of the juvenile court officer, in a group foster care home that specialized in the treatment of sex offenders, including those suffering from Asperger's syndrome, pending acceptance of J.W.R. into the program.

The State filed a petition for a writ of certiorari, contending the district court exceeded its authority by entering a consent decree that placed J.W.R. in residential treatment.[8] We granted the writ and transferred the case to the court of appeals.

A majority of the court of appeals panel sustained the writ. The majority concluded the statute was ambiguous and applied a number of principles of statutory construction. First, the majority determined the rule of *ejusdem generis* precluded a construction of the statute that a term or condition could include residential treatment. Second, the majority concluded that because a deferred judgment in a criminal

---

[8]The State did not challenge the authority of the district court to order the department of human services to pay for the residential treatment.

proceeding does not include jail time, a consent decree could not involve residential treatment. Third, the majority concluded that, under Iowa caselaw, the district court lacked authority to order an out-of-home placement. Finally, the majority noted there was no express funding mechanism for the placement. As a result, the court of appeals sustained the writ and remanded the case to the district court for further proceedings.

## II. Overview of Chapter 232.

### A. Legislative History of Juvenile Consent Decrees in Iowa.

1. *The Iowa Juvenile Justice Act of 1978.* Work to revise the chapter of the Code related to juvenile justice began in 1973 when the general assembly requested the Iowa Legislative Council to direct the penal and correctional systems study committee to conduct a study of Iowa's juvenile justice system. Penal & Corr. Sys. Study Comm., *Report to the Legislative Council and the Members of the First Session of the Sixty-Sixth General Assembly*, at 1 (1975).

Picking up where the penal and correctional systems study committee left off, the juvenile justice study committee completed its first interim report in 1975. The report noted that "[c]urrently the practice of informal probation (the practice of placing a juvenile under supervision without an adjudication) is widely used throughout the state of Iowa without clear statutory authority." Juvenile Justice Study Comm., *Report to the Legislative Council and the Members of the Second Session of the Sixty-Sixth General Assembly*, at 2 (1976). The interim report further provided:

> The Study Committee recommends that the practice of informal probation be statutorily provided with the following procedural safeguards; the juvenile's participation in an informal probation agreement must be voluntary with the

advice of his or her parent, guardian, or other responsible adult and legal counsel and if an informal probation agreement is entered into a petition alleging delinquency may not be filed against the juvenile arising out of the same transaction or occurrences which initially brought the juvenile to the attention of the authorities. The Committee further recommends that informal probation agreements not be effective for longer than a six-month period.

*Id.* The report led to the introduction of a draft bill in the closing days of the legislative session in May 1976. *See* S.F. 1344, 66th G.A., 2d Sess. (Iowa 1976). The draft bill contained a proposed section on consent decrees. *See id.* § 23.

The juvenile justice study committee's second interim report detailed its findings from its examination of the draft bill. Juvenile Justice Study Comm., *Report to the Legislative Council and the Members of the First Session of the Sixty-Seventh General Assembly*, at 2 (1977) [hereinafter 1977 Report]. In particular, it noted a division of the draft bill detailed the "guidelines for consent decrees (which are comparable to deferred judgments in criminal court)." *Id.* at 3.

Finally, in 1978 the legislature enacted House File 248. *See* 1978 Iowa Acts ch. 1088. The bill's explanation described it as "a complete reorganization of the Code dealing with juveniles." H.F. 248, 67th G.A., 2d Sess., explanation (Iowa 1978).

2. *Liberal construction.* The first section of the 1978 Juvenile Justice Act did not change from its predecessor. It provides for liberal construction of the juvenile justice chapter:

This chapter shall be liberally construed to the end that each child under the jurisdiction of the court shall receive, preferably in his or her own home, the care, guidance and control that will best serve the child's welfare and the best interest of the state. When a child is removed from the control of his or her parents, the court shall secure for the child care as nearly as possible equivalent to that which should have been given by the parents.

1978 Iowa Acts ch. 1088, § 1. This section remains substantially the same today. *See* Iowa Code § 232.1 (2011).

3. *Original consent decree provision.* As enacted in 1978, the Act provided for consent decrees in delinquency proceedings. *See* 1978 Iowa Acts ch. 1088, § 26 (codified at Iowa Code § 232.46 (1979)). The language of the original Act broadly vested discretion in the juvenile court to enter a consent decree "under terms and conditions established by the court." *Id.* The original Act further provided, "These terms and conditions may include the supervision of the child by a juvenile probation officer or other agency or person designated by the court." *Id.* Finally, the Act provided that the original petition against the child could not be reinstated if the child "complied with the express terms and conditions of the consent decree for the required amount of time or until earlier dismissed." *Id.*

Thus, at its inception the Juvenile Justice Act did not limit the terms and conditions a district court could impose. Nor did it limit the type of custody arrangements or treatment options a juvenile court could impose as a term or condition. Rather, it stated the terms and conditions permissively "may include" probation. This makes sense because the legislature contemplated consent decrees in juvenile proceedings as an analog to deferred judgments in adult criminal proceedings. In fact, the legislature had recently completed an overhaul of the criminal code, in which it provided that "[w]ith the consent of the defendant, the court may defer judgment and place the defendant on probation upon such conditions as it may require" and that "[u]pon fulfillment of the conditions of probation the defendant shall be discharged without entry of judgment." *See* 1976 Iowa Acts ch. 1245, ch. 3, § 702 (codified at Iowa Code § 907.3(1) (1979)).

4. *1982 amendment authorizing district court to order work assignments or restitution in consent decrees parallels provision following an adjudication.* In 1982, the legislature amended the consent decree provision of the Juvenile Justice Act to provide that the terms and conditions may also permissibly include a "requirement that the child perform a work assignment of value to the state or to the public or make restitution consisting of a monetary payment to the victim or a work assignment directly of value to the victim." 1982 Iowa Acts ch. 1209, § 11 (codified at Iowa Code § 232.46(1) (1983)).

This amendment was not directed to the living arrangements of a juvenile, but instead only provided express authorization for a district court to authorize restitution payments that might not otherwise have been provided for by the Code. *See* H.F. 2460, 69th G.A., 2d Sess., explanation (Iowa 1982) (noting the amendment was to "add language to include restitution to a victim or to the state or public as a specific disposition under . . . a consent decree"). The amendment was plainly designed to ensure the terms and conditions of a consent decree could relate to restitution in addition to other terms, such as those possibly pertaining to living arrangements.

Notably, the legislature had already provided, in a substantively identical provision as a part of the 1978 Act, that an order following an adjudication of delinquency could prescribe a work assignment or the payment of restitution. *See* 1978 Iowa Acts ch. 1088, § 32 (codified at Iowa Code § 232.52(2)(*a*) (1979)). Thus, the addition of language related to restitution was not designed to distinguish remedies available under a

consent decree from remedies available pursuant to adjudication.[9] Indeed, the opposite seems to be true. The legislative language ensures that the power to impose restitution is available in the contexts of both consent decrees and adjudications of delinquency.

5. *1994 amendments authorize district court to restrict driving privileges in consent decrees and following adjudications.* In 1994, the legislature amended the consent decree provision for a second time. Like the 1982 amendment, the 1994 amendment had nothing to do with living conditions or residential placement. Instead, it related to driving privileges. The amendment provided that the terms and conditions of a consent decree could also include "prohibiting a child from driving a motor vehicle for a specified period of time or under specific circumstances." 1994 Iowa Acts ch. 1172, § 19. In the same piece of legislation, the legislature also provided for the suspension of driving privileges following an adjudication of delinquency involving certain delinquent acts.[10] *Id.* § 21. Thus, the legislature again paralleled the consent decree provision and the provision setting forth permissible orders following an adjudication of delinquency by ensuring judicial authority to impose driving restrictions in both situations.

**B. Juvenile Consent Decree Provisions in Other States.** A number of states have statutory provisions related to consent decrees or consent decrees in their juvenile justice codes. Some states' consent decree or consent decree provisions, like Iowa's, use broad language authorizing the district court to enter consent decrees or decrees under

---

[9]In the same piece of legislation, the legislature also provided for victim restitution under informal adjustments. *See* 1982 Iowa Acts ch. 1209, § 8 (codified at Iowa Code § 232.29 (1983)).

[10]Again, the legislature provided for the same restrictions under an informal adjustment. *See* 1994 Iowa Acts ch. 1172, § 14.

terms and conditions that may be imposed by district courts. For instance, in Alabama, a juvenile court may impose terms and conditions agreed to by the child and his or her parent, legal guardian, or custodian. Ala. Code § 12-15-211(a) (LexisNexis 2012). Similarly, Nevada allows the juvenile court to "[p]lace the child under the supervision of the juvenile court pursuant to a supervision and consent decree" without any express limitation as to the terms and conditions that might be imposed. Nev. Rev. Stat. § 62C.230(b) (2011). In Wyoming, the juvenile court may "place a delinquent child under the supervision of a probation officer," and such "placement of the child is subject to the terms, conditions and stipulations agreed to by the parties affected." Wyo. Stat. Ann. § 14-6-228(a) (2012).

Other states, however, markedly depart from the Iowa approach and explicitly use restrictive language to limit the discretion of the district court in fashioning juvenile consent decrees. For instance, in Pennsylvania, a consent decree may be entered before adjudication to "continue the child under supervision in his own home." 42 Pa. Cons. Stat. Ann. § 6340(a) (Supp. 2012). New Mexico has a similar provision. *See* N.M. Stat. Ann. § 32A-2-22(A) (2010) ("[T]he court may . . . continue the child under supervision in the child's own home under terms and conditions negotiated with probation services and agreed to by all the parties affected."). The Wisconsin statute takes the middle ground, providing that a consent decree may "place the juvenile under supervision in the juvenile's own home *or* present placement." Wis. Stat. Ann. § 938.32(1)(a) (West 2009) (emphasis added). Plainly, placement of a child in a residential facility pursuant to a consent decree would be outside the scope of the court's authority under the narrow statutes of Pennsylvania or New Mexico. Iowa's statute, however, does not have

comparable language limiting the discretion of the district court to fashion the terms and conditions of a consent decree that are in the best interests of the child.

**C. Caselaw Related to Consent Decrees.** There is very little appellate caselaw related to juvenile consent decrees. This is hardly surprising. Ordinarily, when a consent decree is issued, the parties have reached an agreement regarding the course of action to be followed with respect to the juvenile. Iowa Code section 232.46(3) expressly provides, however, that a county attorney may object to a consent decree. Such an objection occurred in this case and led to the present appeal.

The parties have cited two Iowa cases related to juvenile consent decrees. In *In re Rousselow*, 341 N.W.2d 760, 763 (Iowa 1983), a child argued the juvenile court improperly refused to consider the child's motion for a consent decree even though an adjudicatory hearing had been held because no order adjudicating the child delinquent had been entered. Agreeing with the child, we held that the juvenile court should have considered the child's motion because section 232.46(1) does not turn on whether an adjudicatory hearing has been held, but rather on the entry of an order of adjudication, and because such an order could be deferred until a dispositional hearing. *Id.* at 764–65. Further, in *Rousselow* we characterized the continuation of a juvenile's case under a consent decree as a probationary period. *Id.* at 762. The case did not discuss, however, whether the juvenile court had the authority to require residential treatment, transfer custody, or require the department of social services to pay for residential treatment as a term or condition of a consent decree.

The parties also cited *In re C.D.P.* There, we considered the validity of a juvenile court order that transferred custody to the department of

social services (the predecessor to the department of human services), placed the child in a specific facility, and ordered payment by the department of social services. *In re C.D.P.*, 315 N.W.2d at 732. Notably, although the parties and the juvenile court referred to the order as a consent decree, we held it was not a consent decree because the department "was not a party to any consent proceedings under section 232.46." *Id.* at 733. Thus, we found section 232.46 inapplicable and reasoned the transfer of custody to the nonparty department of social services must necessarily have been a disposition made pursuant to section 232.52. *Id.* As a result, the district court was required to adjudicate the child pursuant to Iowa Code section 232.50 prior to attempting to transfer custody to the department and requiring it to pay placement costs. *Id.* We further held that where custody of a child is transferred to the department under Iowa Code section 232.52(2)(*d*)(3), the juvenile court may not order placement in a specific facility. *Id.* Finally, we held that where disposition of a juvenile case occurs pursuant to an adjudication under Iowa Code section 232.52, there must first be a dispositional hearing under Iowa Code section 232.50. *Id.*

Because the juvenile court had ordered custody transferred to the department of social services pursuant to a dispositional order not preceded by an adjudication of delinquency, which was impermissible under section 232.50 and 232.52, we remanded the case to allow the court to adjudicate the child delinquent to the extent it wished to enter a dispositional order transferring custody of the child to the department. *Id.* In any event, *In re C.D.P.* does not have any bearing on this case because we are faced with a consent decree entered pursuant to section 232.46 and solely concerned with the juvenile court's authority to order residential treatment as a condition of a consent decree.

**III. Discussion of Merits.**

**A. Positions of the Parties.** On appeal, the State raises only one issue in its brief: "Did the juvenile court act illegally in granting a consent decree, then placing the teenager in residential treatment?" The State argues that under *In re Rousselow* and *In re C.D.P.*, residential treatment may be ordered only after an adjudication under Iowa Code section 232.52. According to the State, our caselaw does not allow a district court to enter an order for residential treatment pursuant to a consent decree under Iowa Code section 232.52. J.W.R. responds by contending that the legislature broadly vested the district court with the power to impose "terms and conditions" in a consent decree under Iowa Code section 232.46 and that the statute does not contain any language prohibiting a consent decree that includes residential treatment as a term or condition. As indicated by the following discussion, the resolution of this issue does not depend on resolution of the custody or funding issues.

**B. Broad Discretion in District Court to Sculpt Consent Decrees.** We begin with noting that as the statute was originally passed, the legislature vested broad discretion with the juvenile court to determine the terms and conditions of a consent decree. While the legislature provided that such terms and conditions may include probation under supervision, there was nothing in the original legislation suggesting the juvenile court lacked the authority to require residential treatment as a term or condition of a consent decree.

It is noteworthy that the Iowa consent decree provision does not contain the limitation of consent decree provisions in states like Pennsylvania or New Mexico, which expressly limit consent decrees to

situations involving in-home placement. Instead, Iowa has opted for a broader statutory approach.

Further, the legislature's use of the broad and flexible phrase "terms and conditions" does not mean that there are no limitations on juvenile court discretion. Iowa Code § 232.46. For example, a term or condition might not be valid if it had no relationship to the crime for which the offender was committed, related to conduct which was not in itself criminal, or required or forbade conduct not reasonably related to future criminality. *See* Samuel M. Davis, *Rights of Juveniles*, § 7:3 (2013) (citing *In re Frank V.*, 285 Cal. Rptr. 16, 21 (Ct. App. 1991)). Otherwise, however, the juvenile court has broad discretion in shaping a consent decree to meet the specific facts of each case.

**C. Liberal Construction of Broad District Court Discretion to Enter Consent Decrees.** Any interpretation of the scope of discretion of a district court in establishing the terms and conditions of a consent decree under section 232.46 must also take into account the general instructions of the legislature in section 232.1. The legislature has directed that "[t]his chapter shall be liberally construed to the end that each child . . . shall receive . . . the care, guidance and control that will best serve the child's welfare and the best interest of the state." Iowa Code § 232.1. Juvenile proceedings "are not criminal proceedings but are special proceedings that serve as an alternative . . . with the best interest of the child as the objective." *In re J.A.L.*, 694 N.W.2d 748, 751 (Iowa 2005). A narrow reading of the authority of the juvenile court to fashion consent decrees under section 232.46 is inconsistent with these principles.

**D. Legislative History Comparing Consent Decrees to Deferred Judgment Supports Residential Treatment.** As noted above, the 1977

committee report compared consent decrees to deferred judgments in the criminal context. *See* 1977 Report, at 3. In the context of deferred judgments, we have held that the legislature has given the district court broad authority to establish conditions of probation. *State v. Rogers*, 251 N.W.2d 239, 241–43 (Iowa 1977). We have further stated that in granting probation, the terms and conditions must relate to rehabilitation of the convicted criminal, protection of the community, or both. *Id.* at 243. We have specifically held that a requirement that the defendant attend a residential treatment center is a legally permissible condition of a deferred judgment in the adult criminal context. *State v. Sinclair*, 582 N.W.2d 762, 765–66 (Iowa 1998). Because the legislature intended the consent decree in juvenile proceedings to be analogous to the deferred judgment in criminal proceedings, it logically follows that the legislature also intended residential treatment to be a legally permissible condition of consent decrees.

The court of appeals cited *State v. Tensley*, 334 N.W.2d 764 (Iowa 1983), for the proposition that the district court lacks authority to order residential treatment as a condition of a consent decree because it would be akin to ordering the juvenile to serve jail time and therefore was mutually exclusive to releasing the child on probation. In *Tensley*, we held that a criminal defendant could not be sentenced to serve time in a county jail as a condition of probation because, while the deferred judgment statute permitted "commitment to an alternate jail facility or a community correctional residential treatment facility," neither was meant to be the equivalent of jail. *Id.* at 765 (internal quotation marks and citations omitted); *see also Trecker v. State*, 320 N.W.2d 594, 596 (Iowa 1982). But whether pursuant to a consent decree or probation subsequent to a deferred judgment, residential treatment is not

punishment. Instead, residential treatment is for the benefit of the juvenile or the defendant, depending on the case.

**E. The Doctrine of *Ejusdem Generis* Has No Application in Determining Scope of Consent Decrees Under Section 232.46.** The doctrine of *ejusdem generis* "provides that when general words follow specific words in a statute, the general words are read to embrace only objects similar to those objects of the specific words." *Teamsters Local Union No. 421 v. City of Dubuque*, 706 N.W.2d 709, 715 (Iowa 2005). Key to the application of the doctrine is the identification of a class. *See id.*; *see also Federated Mut. Implement & Hardware Ins. Co. v. Dunkelberger*, 172 N.W.2d 137, 141 (Iowa 1969) (noting the doctrine "applies only where the specific words relate to a single class, character or nature"), *overruled on other grounds by Lewis v. State*, 256 N.W.2d 181 (Iowa 1977).

Examination of the legislative history of Iowa Code section 232.46 demonstrates that the doctrine of *ejusdem generis* has no application. Certainly the probationary language in the original statute would not be construed to limit the power of the district court to enter consent decrees. As originally enacted, section 232.46 provided that a consent decree may include probation under supervision as a term or condition, but this language, standing alone, cannot be construed to prohibit residential treatment. In other words, when the statute was originally enacted, there was no class that might restrict the scope of the general phrase "terms and conditions."

The 1982 and 1994 amendments to the consent decree statute were similarly not designed to limit the permissible terms and conditions of a consent decree, but rather served primarily to *expand* the district court's authority to impose terms and conditions related to two different

areas—restitution and driving privileges. They were also added to parallel the consent decree and informal adjustment provisions of the juvenile justice chapter with the provision providing possible dispositions following an adjudication of delinquency.

The addition of two diverse sanctions, which the district court may include as part of a consent decree, do not form an identifiable class of conduct triggering *ejusdem generis*. After the amendments, the statute vests the juvenile court with discretion to sculpt a consent decree with terms and conditions that may include terms and conditions related to supervision, terms and conditions related to work and restitution, and terms and conditions related to driving privileges, among others. Simply, the statute has never contained a class with similar characteristics that would trigger the doctrine's application. *See* 2A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 47.18, at 382 (7th ed. 2007) (noting that without similar characteristics, "classification is arbitrary and meaningless" for *ejusdem generis* purposes). Where a general term is followed by specific terms not suggesting a class, the rule does not apply. *Id.* § 47.20, at 387.

Further, the additional amendments were added to both the consent decree and the adjudication provisions of chapter 232. It seems doubtful the legislature added the language to section 232.52 to expand the range of options for the juvenile court, but added identical language to section 232.46 to restrict the juvenile court's power to shape consent decrees. Clearly, the legislature wanted to add to the options of the juvenile court in both the consent decree and adjudication settings. It did not want to limit the power of the juvenile court in the consent decree context as compared to an adjudicative context.

Moreover, the juvenile court's authority to order treatment under section 232.46 stems from two clauses. First, the unbound "terms and conditions established by the court" provides an avenue through which the juvenile court could order residential treatment. Iowa Code § 232.46(1). Second, because one of the suggested terms and conditions is akin to probation and because residential treatment is a permissible condition of probation, it follows that such treatment would also be permissible under the probation clause.

**F. Inapplicability of Due Process Concerns.** The majority seeks to inject into this case the issue of whether J.W.R.'s parents were deprived of due process by the consent decree in this case. J.W.R.'s parents, of course, do not complain, but nonetheless, the majority proceeds to explore the issue.

In this case, an order transferring temporary custody of the child with juvenile court services was entered on June 3, 2011. A copy of the order was sent to J.W.R.'s parents. The parents received notice, but filed no objection to the temporary transfer of custody to juvenile court services. Further, the parents appeared at the October 19 adjudicatory hearing, during which the consent decree was discussed, and again raised no objection.

The December 5 order did not alter custody arrangements. Custody of J.W.R. had already been temporarily transferred to juvenile court services. Instead, the consent decree only affected J.W.R.'s placement. *See Pfoltzer v. Cnty. of Fairfax*, 775 F. Supp. 874, 883 n.17 (E.D. Va. 1991). The fact that the consent decree involved placement and not custody was recognized by the State when it characterized the issue as one involving placement of the child in a residential treatment

facility. The State correctly did not characterize the issue as one involving a transfer of custody as the majority mistakenly does.

The due process concerns associated with placement are significantly less than those associated with a transfer of custody. *See id.* at 882–83 & n.17. In *Fitzgerald v. Williamson*, 787 F.2d 403, 408 (8th Cir. 1986), a case in which a state agency had acquired legal custody of a child, the Eighth Circuit noted that postdeprivation procedural safeguards are constitutionally adequate. In Iowa, a habeas remedy is available for such deprivations. *See Lamar v. Zimmerman*, 169 N.W.2d 819, 821 (Iowa 1969) ("Although habeas corpus was originally designed to test the legality under which a person was restrained of his liberty, it was long ago enlarged to include an inquiry into the proper custody of minor children."). A parent may also file a habeas petition to challenge placement. *See Doan Thi Hoang Anh v. Nelson*, 245 N.W.2d 511, 513–14, 516 (Iowa 1976) (permitting a Vietnam War refugee to file a petition for a writ of habeas corpus to regain custody of her child who had been placed with an Iowa family for purposes of adoption, but had not yet been legally adopted).

In any event, Iowa Code section 232.38(1) prohibits judicial proceedings subsequent to the filing of a petition without the presence of the child's parents, unless they have failed to appear after reasonable notification. Further, Iowa Code section 232.46(3) expressly provides that the juvenile court may not enter a consent decree "unless the child and the child's parent, guardian or custodian is informed of the consequences of the decree by the court." Iowa Code § 232.46(3). Granted, the provision allows a county attorney to object to the entry of a consent decree and does not expressly allow a parent to object to its terms. *Id.* Even if the parents were not entitled to a predeprivation right

to be heard, contrary to *Fitzgerald*, such a right would be implied. *See Traverso v. People ex rel. Dep't of Transp.*, 864 P.2d 488, 494–95 (Cal. 1993) ("[T]he United States Supreme Court . . . [has] inferred a right to a hearing when constitutional problems would otherwise arise."); *see also State v. One 1978 Chevrolet Corvette VIN No. 1Z87L8S437138*, 667 P.2d 893, 897 (Kan. Ct. App. 1983) (suggesting that courts can graft requirements for notice and a hearing onto a statute that does not otherwise explicitly set forth those requirements in order to give the statute a constitutional interpretation). If at all possible, we construe statutes to avoid constitutional issues. *Simmons v. State Pub. Defender*, 791 N.W.2d 69, 73–74 (Iowa 2010).

**G. Timing Issues.** The majority opinion suggests that residential treatment is inappropriate because of the timing restrictions of section 232.46, which permits a consent decree to remain in effect for up to two years. Iowa Code § 232.46(4). The timing restrictions, however, do not prevent the juvenile court, in its discretion, from utilizing residential treatment as a term and condition of a consent decree where the timing restriction does not present an obstacle. The timing limitations, of course, must be respected by a juvenile court. Further, a consent decree may remain in effect beyond a child's eighteenth birthday. *In re J.J.A.*, 580 N.W.2d 731, 738 (Iowa 1998).

**H. Impact of Funding Issues.** Initially, it must be noted that no party raised in the trial court the issue of whether the district court had the authority to order DHS to pay for the residential treatment imposed as a term or condition of the consent decree in this case. Further, on appeal, the State makes no claim that the juvenile court lacked the authority to order DHS to pay. Moreover, DHS has not involved itself in the case.

Therefore, this case is fundamentally different from *In re C.D.P.*, where the department of social services brought the challenge. The State does not contend that it is representing DHS or seeking to advance DHS's financial interests. As a result, any issue regarding the appropriateness of the funding of the placement with the department in this case is not before the court.

In any event, even the precise question related to funding in this case is not the terms and conditions under which DHS may be required to pay for placement under an adjudication. The real question is to what extent DHS may be required to pay for placement pursuant to temporary orders entered by the juvenile court prior to an adjudication which remain in place following a consent decree. If that issue was properly before us, there would be a number of interesting questions to explore.

For example, Iowa Code section 232.21 authorizes the juvenile court to order shelter care in various licensed care facilities and "[a]ny other suitable place designated by the court" as long as it is not a detention facility. *Id.* § 232.21(2)(*a*)(4); *see also id.* § 232.21(1)(*e*). When a child is placed in shelter care pursuant to section 232.21, the state must pay the costs. *Id.* § 234.35(1)(*h*). In the case of an alleged delinquent child, shelter care may continue for any period until the final disposition of the case. *Id.* § 232.2(50).

In this case, J.W.R. was placed in shelter care at Polk County Youth Services and then at Four Oaks shelter in Iowa City. The placement in the residential facility in this case at least arguably includes a shelter care component, which may be paid for by the state, *id.* § 234.35(1)(*h*), and a treatment component, which may also be paid for by the state, *id.* § 232.141(4)(*c*).

Further, even if there is no authority for the state to pay for the residential treatment in this case, the argument may be made that section 232.46 does not prohibit a parent or some third party from paying for the treatment even if the state is precluded from doing so. In fact, section 232.141(1) directs the juvenile court to inquire into the ability of the child's parent to pay the cost of court-ordered treatment and order such payment if the parents are able. *See id.* § 232.141(1).

Finally, even if there is no express statutory authority for the state to pay the costs of residential treatment ordered pursuant to a consent decree, that does not mean the district court may never order residential treatment pursuant to a consent decree. The current funding provisions were amended in 1989 as part of an effort to shift the burden of providing juvenile justice services from the county to the state. *See* 1989 Iowa Acts ch. 283, § 23 (codified at Iowa Code § 232.141 (Supp. 1989)). There is nothing in the legislative history to suggest a purpose of the change in the funding stream was to alter the discretion of the district court to enter consent decrees based upon terms and conditions the district court believed appropriate.

None of these issues, however, have been raised in this case. The above discussion is simply designed to illustrate the wisdom of our traditional rules of issue preservation.

**IV. Conclusion.**

Iowa Code section 232.46 vests broad discretion in the district court to enter consent decrees under terms and conditions approved by the juvenile court. The legislative history reveals that consent decrees were akin to deferred judgments in the criminal context. Because a district court may order a criminal defendant to residential treatment as part of a probation order entered pursuant to a deferred judgment, it is

safe to assume that the legislature also intended the juvenile court to have similar power in the context of a consent decree under Iowa Code section 232.46. This analogy is strengthened by section 232.1, which emphasizes that the terms of the Act are to be liberally construed.

Further, the language of the statute, coupled with the legislative history, demonstrates that the doctrine of *ejusdem generis* does not serve to curtail the discretion of the juvenile court to enter consent decrees or specify their terms and conditions. It would also be ironic to turn subsequent amendments designed to expand judicial remedies upside down and interpret them as a tool to restrict judicial authority. Moreover, timing concerns are of little import because the juvenile court would be unlikely to issue a consent decree if it was likely to lose jurisdiction over the child in short order.

Finally, we should not consider the potential due process concerns of parents arising from a transfer of custody under section 232.46 because the State lacks the standing to raise these concerns. In any event, the custody concerns are without merit. We should similarly not consider issues of funding that are not properly before the court. Payment for residential treatment pursuant to a consent decree is a complicated issue that we should not be so quick to decide without input from the parties. In any event, DHS has not challenged its ability to pay, and the State has not preserved the issue on DHS's behalf.

For the above reasons, the juvenile court has the broad discretion to sculpt a consent decree under section 232.46 that includes residential treatment. As a result, the writ of certiorari should be annulled.

Wiggins and Hecht, JJ., join this dissent.